1 | MARK S. BLACKMAN
CA NO. 119466
2 | BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
3 | 3990 E. CONCOURS STREET, SUITE 350
ONTARIO, CALIFORNIA 91764
4 | Phone: (626) 371-7000
Fax: (972) 661-7726
5 | E-mail: sdcaecf@bdfgroup.com
File No. 9362823
6 |
7 | Attorney for Movant
8 | 21ST MORTGAGE CORPORATION

9 | UNITED STATES BANKRUPTCY COURT

10 | NORTHERN DISTRICT OF CALIFORNIA – (SANTA ROSA)

11

| In re: | CASE NO.: | 21-10498-DM |
|--------|-----------|-------------|
| GABRIELA LOGAN, | | |
| FKA GABRIELA QUIROZ | CHAPTER: | 13 |
| FKA GABRIELA QUIROZ-VARGAS | | |
| | R.S. NO.: | EAT-2072 |

DECLARATION IN SUPPORT OF MOTION
FOR RELIEF FROM THE AUTOMATIC STAY
(UNLAWFUL DETAINER)

Debtor(s).

I, Lisa Buckner, declare as follows:

1. I am a/an Bankruptcy Coordinator for 21ST MORTGAGE CORPORATION and am authorized to sign this declaration on behalf of 21ST MORTGAGE CORPORATION ("Movant"). This declaration is provided in support of the Motion for Relief from Stay (Unlawful Detainer (the "Motion") filed contemporaneously herewith.

2. I have personal knowledge of the facts contained in this declaration as follows: I am familiar with the systems of record that Movant uses to record and create information related to the residential manufactured home loans that it services, including the processes by which Movant obtains the loan information in those systems. While many of those processes are automated, the

1

information manually entered by Movant's employees relating to loans on those systems is based upon personal knowledge of the information and is entered into the system at or near the time the knowledge was acquired. These computerized records are created and maintained in the regular course of its business as a loan servicer and Movant relies on the records in the ordinary course to conduct its business as a loan servicer.

3. Debtor GABRIELA LOGAN ("Debtor") filed a Chapter 13 Bankruptcy with this Court on November 24, 2021. DAVID BURCHARD was appointed Chapter 13 Trustee.

4. The property for which Movant seeks relief from stay is a 2003, The Andrew Karsten Co Inc, "Villa" (27' x 56') mobile home, Serial Number KCCA01K31382A/B, Decal Number LBE9973, located at 414 OTT ST, SPACE 97, SANTA ROSA, CA 95407 (the "Subject Property").

5. On or about March 10, 2015, Debtor GABRIELA LOGAN, and co-borrower Larry H. Logan, entered into an agreement to purchase the Subject Property, financing the sum of $127,054.00, and executed a CONSUMER LOAN NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT ("Security Agreement") in favor of 21ST MORTGAGE CORPORATION ("Movant"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit "1"** and is incorporated herein by this reference.

6. A true and correct copy of the CERTIFICATE OF TITLE, showing Movant as legal owner, is attached hereto as **Exhibit "2"** incorporated herein by this reference.

7. The Debtor defaulted under the terms of the Security Agreement in that she failed to make monthly installment payments to Movant and failed to pay monthly space rent obligations to the mobile home park. Consequently, on September 5, 2019, Movant served a Notice of Default on Debtor and co-Borrower(s), pursuant to California Health & Safety Code Section 18037.5, via certified mail postage prepaid. Said Notice informed Debtor and co-Borrower(s) that they had 45 day or until October 21, 2019 to cure said default and to obtain written proof that the Mobile Home Park had rescinded its Notice of Termination of Tenancy. Said notice further provided that if said Default was not cured, the Subject Property would be sold. True and correct copies of said Notice of Default, the Mobile Home park's notice of termination of tenancy and certified mail receipts are attached hereto as **Exhibit "3"** and incorporated herein by this reference.

2

8.      The Debtor failed to cure said default; consequently, on June 18, 2020, attorney for Movant served a Notice of Our Plan to Sell Property (Mobile home) on Debtor and co-Borrower(s), pursuant to California Health & Safety Code Section 18037.5, via certified mail postage prepaid, informing that said Property would be sold at private sale on July 6, 2020. True and correct copies of the Notice of Our Plan to Sell Property together with the certified mail receipts are attached collectively hereto as **Exhibit "4"** and are incorporated herein by this reference.

9.      Since the Debtor failed to cure or redeem the property, the Subject Property was sold on July 6, 2020, before the bankruptcy petition was filed.

10.      Movant has no landlord tenant relationship with the Debtor whose right, title and interest in the real property has been foreclosed in compliance with applicable non-bankruptcy law. The Subject Property is not necessary to an effective reorganization because it is no longer property of the estate. The Debtor occupies the real property without Movant's consent and has timed the filing of this bankruptcy case to further delay Movant's efforts to obtain a court judgment for possession of the real property.

11.      For these reasons, it is respectfully requested that this Court grant Movant's Motion for Relief from Stay and allow Movant to obtain possession of the Property.

12.      The foregoing facts are known to me personally, and if called as a witness, I would testify competently thereto.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed this _9th_ day of December, 2021 at _Knoxville_ , _TN_ .

_Lisa Buckner_
Signature

_Lisa Buckner_
Printed Name

_Bankruptcy Coordinator_
Title

3

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 3 of 31

# EXHIBIT 1



## CONSUMER LOAN NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT

| LENDER: 21st Mortgage Corp. 620 Market St. Suite 100 Knoxville, TN 37902 | |
|---|---|
| Borrower's Name: LARRY H LOGAN | Co-Signer's Name: |
| Co-Borrower's Name: GABRIELA LOGAN | Co-Signer's Name: |
| Borrower's Address: 624 CHARLES ST SANTA ROSA CA 95404 | Co-Borrower's Address: 624 CHARLES ST SANTA ROSA CA 95404 |

In this Consumer Loan Note ("Note"), "Borrower" refers to all persons who sign this Note as "Borrower" and "Co-Borrower", jointly and severally. "Lender" refers to 21st Mortgage Corporation ("21st Mortgage"), and its successors and assigns. Other capitalized terms are defined in the disclosures on this page and in the section of this Note titled, "Itemization of Amount Financed." Borrower promises to advise Lender in writing of any change of Borrower's mailing address while this Note is in effect. Lender should send any papers or notices concerning this Note to Borrower's mailing address. On the date of this Note, Borrower finances with Lender the manufactured home described below, together with the related services, furnishings, equipment, appliances and accessories included with the manufactured home (collectively, "Manufactured Home").

**Description of Manufactured Home:** ☐ New  ☒ Used

| MANUFACTURER: ANDREW KARSTEN | YEAR: 2003 | ADDITIONAL ACCESSORIES AND FURNISHINGS: ITEM AND SERIAL NO. | |
|---|---|---|---|
| APPROX. LENGTH: 56 | APPROX. WIDTH: 27 | | |
| SERIAL NO. | KCCA01K31382AB | | |
| SERIAL NO. | | | |
| SERIAL NO. | | | |
| SERIAL NO. | | | |

**PROMISE TO PAY:** Borrower promises to pay Lender the "Unpaid Balance" as listed under the "Itemization of Amount Financed" plus interest. When Borrower signs this Note, Borrower will also pay Lender any "Prepaid Finance Charge" shown in the "Itemization of Amount Financed." Borrower authorizes Lender to include the Prepaid Finance Charges in the Unpaid Balance. Lender will compute and charge interest on the unpaid amount of the Unpaid Balance from the Note date at the yearly rate of **9.59%** (the "Note Rate"). When Lender calculates interest, every year shall have 360 days and every month shall have 30 days. Borrower promises to pay interest at the Note Rate on the unpaid amount of the Unpaid Balance of this Note until it is paid in full. Interest after the final scheduled maturity date on this Note, however, shall not exceed the maximum rate allowed by state law.

**Borrower's Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 276 | $1,196.67 | Monthly, beginning 04/15/2015 |

BORROWER FURTHER PROMISES to pay Lender monthly payments in the number and amounts of payments shown in Borrower's Payment Schedule. Borrower's first payment will be due on the first date shown in Borrower's Payment Schedule, and subsequent payments will be due on the same day of each month after that.

LENDER WILL APPLY EACH PAYMENT RECEIVED AS OF ITS SCHEDULED DUE DATE. If on the final scheduled payment due date, Borrower still owes amounts under this Note, Borrower will pay those amounts in full on that date (the "Maturity Date"). Borrower will make all payments to 21st Mortgage Corp., 620 Market St. Suite 100, Knoxville, Tennessee 37902, or any other address to which Lender directs Borrower to send Borrower's payments.

**SECURITY INTEREST:** To secure payment of all sums due or which become due under this Note, and Borrower's performance of all other terms of the Note, Borrower grants Lender a first priority security interest in (1) the Manufactured Home, and all accessions, attachments, accessories, replacements and additions to the Manufactured Home, whether added now or later; (2) the "Property" described in any mortgage or deed of trust Borrower gives to Lender; (3) Borrower's rights to refunds of premiums for and payments under, and proceeds of any insurance or any extended warranty or service contract purchased with the proceeds of this Note; (4) any amounts held in escrow by Lender for Borrower; and, (5) proceeds and products of all of the foregoing (collectively, the "Collateral"). Lender's security interest shall remain in effect until Borrower pays, in full, all amounts due under this Note. Despite any other provision of the Note, however, Lender is not granted, and does not have, a non-purchase money security interest in household goods, to the extent such a security interest is prohibited by applicable law. Borrower will pay any filing or recording fees necessary for Lender to obtain and hold a first priority security interest. To the extent allowed by law, Borrower also agrees to pay any release, discharge or termination fees, after the Borrower pays the Note in full. Borrower agrees to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect Lender's security interest in the Manufactured Home. Borrower authorizes Lender to sign Borrower's name to any financing statement or application or other document necessary to perfect the security interest granted by Borrower herein. If Lender is taking a security interest in real property, such interest is reflected in a mortgage or deed of trust signed in conjunction with this Note.

Borrower's Initials _____

Co-Borrower's Initials _____

CA Rev. 05/21/2013

21st Mortgage Corp. NMLS 2280  -  Douglas Wayne Bohrer, NMLS 308023

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 5 of

## EXHIBIT 1

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost Borrower. | Amount Financed The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments The amount Borrower will have paid should Borrower make all payments as scheduled. |
|---|---|---|---|
| 10.21% | $203,226.92 | $127,054.00 | $330,280.92 |

### INTEREST RATE AND PAYMENT SUMMARY

|  | Rate & Monthly Payment |
|---|---|
| Interest Rate | 9.59% |
| Principal + Interest Payment | $1,196.67 |
| Est. Taxes + Insurance (Escrow) | $108.83 |
| Total Est. Monthly Payment | $1,305.50 |

**Security:** Borrower gives Lender a security interest in:
- ☒ The Manufactured Home, which will be located at 414 OTT ST SANTA ROSA CA 95407
- ☐ Real property located at

**Late Charge:** If a payment is more than 15 days late, Borrower will be charged 5% of the amount of the past due installment. Other references in this Note to the "Late Charge" refer to the amount

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty.

**Assumption:** Someone buying the Manufactured Home may be allowed to assume the remainder of Borrower's obligations under this Note on the original terms only if such person is approved by Lender.

**Other Information:** Refer to the rest of this Note for additional information about nonpayment, default, any required payment in full before the scheduled date and prepayment refunds and penalties.

**MDIA Refinancing Warning:** There is no guarantee that Borrower will be able to refinance the loan to obtain a lower interest rate and/or payment.

## PROPERTY INSURANCE

**PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS NOTE. BORROWER HAS THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT AND IS REASONABLY ACCEPTABLE TO LENDER.** Borrower elects to finance through Lender the below listed property insurance of the specified type, term and premium.

| Hazard Insurance Provider | Term | Premium |
|---|---|---|
| None | | |

* A separate flood insurance policy may or may not be reflected in the information above or financed as part of the loan. Borrower should refer to the appropriate insurance policy documents for more details.

Borrower's signature below indicates Borrower's election to finance the above listed property insurance for the type, term and premium shown.

Borrower's Signature_____     Co-Borrower's Signature_____

THIS SPACE LEFT INTENTIONALLY BLANK

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 6 of
**EXHIBIT 1**

## ITEMIZATION OF AMOUNT FINANCED:

| | |
|---|---|
| 1. Cash Price | |
|    a. Manufactured Home ** | $140,000.00 |
|    b. Sales Tax | $0.00 |
|    c. Total Cash Price (1a plus 1b) | $140,000.00 |
| 2. Down Payment | |
|    a. Cash Down Payment | $14,000.00 |
|    b. Net Trade-In Allowance | $0.00 |
|      Trade-in ( ) | |
|      Length: 0 Width: 0 | |
|      Liens 0 | |
|    c. Total Down Payment (2a plus 2b) | $14,000.00 |
|    d. Manufacturer's Rebate | $0.00 |
| 3. Unpaid Cash Price for Purchase or Refinance | |
|    a. Unpaid Portion of Cash Price (1c minus 2c and 2d) | $126,000.00 |
|      OR | |
|    b. For a Refinanced Loan, Amount Paid to Others | |
| 4. Amounts paid to others on Borrower's behalf | |
|    a. To Insurance Companies ** | |
|      i. Property Insurance ** | |
|      ii. | |
|    b. To Public Officials | |
|      i. Certificate of Title | $0.00 |
|      ii. Filing/Recording Fees ** | $0.00 |
|    c. | |
|    d. To CREDIT REPORT FEE | $3.00 |
|    e. To ESCROW FEE | $925.00 |
|    f. To HCD FEE | $126.00 |
|    g. | |
|    h. | |
|    i. | |
|    j. | |
|    k. | |
|   Total of All Amounts ((a) through (j)) | $1,054.00 |
| 5. Prepaid Finance Charges (includes items paid to third parties; items may be financed in part and paid in cash in part) | |
|    a. Financed | |
|      i. To FLOOD CERT FEE | $8.00 |
|      ii. To Loan Origination Fee | $1,270.54 |
|      iii. To Broker Fee | $4,764.52 |
|      iv. | |
|      v. | |
|      vi. | |
|    b. Paid in Cash | |
|      i. | |
|      ii. | |
|      iii. | |
|      iv. | |
|      v. | |
|      vi. | |
| 6. Unpaid Balance (3a + 3b + 4 + 5(a)) | $133,097.06 |
| 7. Prepaid Finance Charges (total of all items in 5) | $6,043.06 |
| 8. Amount Financed (6 minus 7) | $127,054.00 |

   ** Lender may retain, or receive, a portion of these amounts

Security interest termination, release, discharge or satisfaction fees paid upon termination will vary based upon applicable law. This fee is not paid by Borrower at closing.

Case: 21-10498   Doc# 14-2   Filed: 12/17/21   Entered: 12/17/21 12:06:25   Page 7 of
EXHIBIT 1



**BORROWER'S RIGHT TO PREPAY: BORROWER MAY PREPAY ANY AMOUNTS DUE UNDER THIS NOTE AT ANY TIME WITHOUT PENALTY.** A Principal only payment is known as a "Prepayment." Lender will not treat a payment as a Prepayment unless Borrower previously made all monthly payments of principal and interest and fully paid and satisfied all other obligations due under this Note. If Borrower meets these conditions, Borrower may make a Prepayment by sending such Prepayment in accordance with the instructions provided by Lender in a monthly billing statement, or payment coupon, or otherwise as directed by Lender. Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. If Borrower (1) prepays this Note in full, or (2) defaults and fails to cure the default and Lender demands payment of the entire balance due on this Note, no portion of any Prepaid Finance Charge will be refunded.

**PROPERTY INSURANCE:** Borrower is required to insure the Manufactured Home against physical damage, including loss by fire, hazards included within the term "extended coverage," and any other hazards for which Lender requires insurance, for the term of the Note at Borrower's expense. If Borrower financed the premium, the premium is financed over the term of the Note, even though the term of insurance is less than the Note term. The Borrower must obtain the types and amounts of insurance coverage required by Lender, including flood insurance if applicable. The insurance policy must contain a loss payable clause protecting Lender (as Lender's interest may appear), and provide for at least a 10 day notice of cancellation to Lender. Borrower agrees to provide written proof of such coverage to Lender within 5 days of Lender's request. BORROWER HAS THE RIGHT TO CHOOSE THE ENTITY THROUGH WHICH THE PROPERTY INSURANCE IS OBTAINED. Lender reserves the right to refuse to accept, for reasonable cause, an insurer chosen by the Borrower. If Borrower's insurance coverage expires or is canceled prior to payment in full of this Note, Borrower must obtain coverage in the amounts, types, and for the periods that Lender requires at Borrower's expense for the remaining term of the Note. Lender's property insurance coverage requirements can change during the term of the Note. Should Borrower fail to provide or maintain property insurance or fail to provide Lender with satisfactory evidence of coverage, or should the property insurance, for any reason, not protect Lender's interests, Lender, in its sole discretion, may obtain property insurance that meets its requirements, but is under no legal obligation to do so. Before obtaining insurance in these circumstances, Lender will, in good faith, attempt to inform Borrower in writing of the need for Borrower to obtain property insurance and/or to provide evidence thereof. If obtained by Lender, Lender will add the cost of the insurance to the amount due under the Note. That amount will become due and payable upon demand by the Lender, in payments added to Borrower's scheduled payments, or as otherwise required by Lender. Lender may charge Borrower interest on such cost at the Note Rate, unless prohibited by applicable law. The property insurance obtained by Lender may have material differences from insurance initially financed under the Note or from insurance obtained by the Borrower initially or at any time during the term of the Note. Such insurance may be significantly more expensive to Borrower than if Borrower obtained the insurance. **Consequently, Lender makes the following disclosures to Borrower: (a) The property insurance that Lender obtains is intended solely to protect the Lender's interest hereunder, and Lender may not obtain coverages beyond those to insure loss of or damage to the Manufactured Home; in particular, such insurance may not provide coverage for personal effects, adjacent structures, medical expenses or personal liability; additionally, such coverage may not insure the Manufactured Home in an amount equal to the Unpaid Balance due under this Note and, consequently, in the event of loss or damage, the insurance may not pay the full amount of the Unpaid Balance of the Note; (b) If Lender obtains this insurance due to Borrower default, Borrower acknowledges and agrees that Lender has no duty to obtain insurance on behalf of Borrower which is the least expensive, or which has a competitive marketplace premium or any other particular feature or special benefit; (c) Lender or its affiliates may be reimbursed for expenses and may profit from taking action to cure Borrower's default by providing and maintaining such insurance; (d) Borrower's execution of this Note authorizes Lender to provide third parties with any information necessary to obtain insurance on the Manufactured Home and monitor the status of such insurance; and (e) Borrower may, as stated above, at any time, including after Lender obtains property insurance on Borrower's behalf, obtain insurance through an agent or insurer of Borrower's choice. Upon so doing, Borrower may provide Lender with sufficient evidence of insurance coverage, at which time, Lender will cancel the insurance coverage it obtained on Borrower's behalf, obtain any refund due on the unearned portion of the premium, and apply the refund to the Unpaid Balance of the Note.** Property insurance proceeds (whether such insurance has been obtained by Borrower or Lender) shall be applied to the restoration or repair of the Manufactured Home, if it is economically feasible and does not lessen the Lender's security interest in the Manufactured Home. If this is not the case, or if the insurer determines that the Manufactured Home represents a total loss under the coverage, Lender will apply such insurance proceeds to reduce all amounts owing under this Note, whether or not such amounts are due and payable. Borrower authorizes Lender to (a) adjust or settle Borrower's claim for loss under such insurance; (b) sign Borrower's name to any check, draft or other documents necessary to obtain such insurance proceeds; and (c) hold such insurance proceeds until Lender has the opportunity to inspect the Manufactured Home and ensure that work to restore or repair the Manufactured Home is completed to Lender's satisfaction, without incurring an obligation to pay Borrower earnings or interest on such proceeds. Lender may disburse proceeds in a single payment or a series of payments and Borrower authorizes any insurer to make such payment directly to Lender. If insurance proceeds paid to Lender do not satisfy all amounts Borrower owes to Lender under this Note, Borrower is responsible for paying the balance.

Borrower's Initials
Co-Borrower's Initials

Page 4 of 8

CA Rev. 05/21/2013

21st Mortgage Corp. NMLS 2280 - Douglas Wayne Bohrer, NMLS 308023

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 8 of

**EXHIBIT 1**



**ESCROW ITEMS:** To the extent permitted by law, Lender may, at Lender's option, require Borrower to make payments in addition to those set forth in Borrower's Payment Schedule ("Escrow Payments") which Lender will collect and hold for (1) the payment of property insurance premiums required under this Note, (2) the payment of taxes and assessments, and (3) other items which might attain priority over Lender's security interest (each, an "Escrow Item"). Lender will use Borrower's Escrow Payments to pay Escrow Items as they come due. **THE BORROWER'S PAYMENT SCHEDULE IN THIS NOTE DOES NOT INCLUDE ANY AMOUNT TO BE PAID UNDER ANY SUCH ESCROW ACCOUNT.**

**SERVICING CHARGES:** Borrower agrees to pay all reasonable charges for Lender's performance of additional services requested by Borrower in connection with the servicing of this Note, to the extent permitted by applicable law.

**ADVANCES TO PROTECT THE COLLATERAL:** If Borrower fails to pay for required insurance, if Borrower fails to pay park or lot rent (and any other related charges), if Borrower fails to satisfy taxes, assessments, or other liens or encumbrances against the Manufactured Home, if Borrower fails to keep the Manufactured Home in good repair or if Borrower fails to make any other payments required by this Note or applicable law, Lender may (but is not required to) make such repairs or payments as Lender chooses. Lender will add any and all such payments and any amounts Lender pays to protect or enforce Lender's security interest to the amount Borrower owes Lender under this Note, and all such amounts will be secured by the Collateral. At Lender's sole option, Lender may (1) demand that Borrower repay these amounts immediately, or (2) add these amounts to Borrower's regularly scheduled payments, or (3) add these amounts as additional installments due, or (4) add these amounts to the final installment due on this Note. Unless prohibited by law, Borrower agrees to pay interest at the Note Rate on any amounts that Borrower does not repay immediately.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than 15 days late, Borrower agrees to pay the Late Charge indicated in the "Truth in Lending Disclosures" section of this Note. If any check, negotiable instrument of withdrawal, electronic payment draft or any other instrument is dishonored by Borrower's financial institution, Borrower will pay a fee of $15.00, in addition to being required to make payment on the item. Borrower will be in default under this Note if: (1) Borrower fails to make any payment when due; (2) Borrower otherwise fails to perform any of Borrower's obligations under this Note or under any mortgage or deed of trust which secures this Note; (3) Borrower dies or becomes legally unable to manage Borrower's affairs; (4) any statement of fact, representation or warranty Borrower makes to Lender in Borrower's application for credit, any other document submitted to the Lender or signed by Borrower in connection with this Note, or in any Note document is false, misleading, inaccurate, or incomplete; or (5) Borrower files a petition in bankruptcy, or a party files a petition in bankruptcy against Borrower. In the event of Borrower's default, Lender will give Borrower notice of the default and right to cure the default ("Notice of Default"). Borrower is not entitled to a Notice of Default if Borrower abandons or voluntarily surrenders the Manufactured Home. If Borrower does not cure the default within 45 days after the postmarked date of the Notice of Default, or if a Notice of Default is not required to be sent, Lender may (1) accelerate the maturity of the debt and require Borrower to pay Lender the entire remaining balance and all other amounts due under the Note, (2) require Borrower to make the Manufactured Home available to Lender, (3) take legal action against Borrower, (4) foreclose upon and repossess the Manufactured Home, (5) enforce such rights and remedies available to Lender under the Uniform Commercial Code and other applicable law, and (6) foreclose on the real property, if applicable. Lender, at its sole option, may elect to sever and remove the Manufactured Home from any real property where it is located, regardless of whether the real property secures this Note. In the event of default, Borrower also agrees to pay Lender's expenses for (a) reasonable attorney's fees permitted under law after referral to an attorney who is not a salaried employee of the Lender; (b) court costs and disbursements; and (c) costs of foreclosing upon and repossessing the Manufactured Home including the costs of storage, reconditioning, and resale. (2) pay Lender all other charges and other expenses provided for under this Note; (3) pay any amounts advanced by Lender to protect the Collateral, without regard to any agreement to repay such amounts advanced on a periodic basis, including but not limited to unpaid insurance premiums, park or lot rent, taxes, assessments or similar items; and (4) cure any other defaults. Borrower's rights to redeem and/or reinstate end upon sale of the Before Lender sells the Manufactured Home, Borrower can get the Manufactured Home back if Borrower either (1) pays off the Note by paying Lender the entire remaining balance and all other amounts due under the Note (redeem), or (2) cures the default by paying Lender the amounts which are past due, including Late Charges (reinstate). Regardless of whether Borrower redeems or reinstates, and before Borrower can get the Manufactured Home back, Borrower must also (1) pay Lender the cost of taking, storing and redelivering the Manufactured Home and other expenses Lender incurs; (2) pay Lender all other charges and other expenses provided for under this Note; (3) pay any amounts advanced by Lender to protect the Collateral, without regard to any agreement to repay such amounts advanced on a periodic basis, including but not limited to unpaid insurance premiums, park or lot rent, taxes, assessments or similar items; and (4) cure any other defaults. Borrower's rights to redeem and/or reinstate end upon sale of the Manufactured Home unless otherwise required by law. All rights and remedies under this Note and any mortgage or deed of trust executed herewith are cumulative, but Borrower's right to a written notice of default and 45 days to cure, as set forth in this Note, shall not be affected by any inconsistent provision of any mortgage or deed of trust. Any personal property of Borrower's located in or attached to the Manufactured Home and not subject to Lender's security interest may be held by Lender without liability if the Lender repossesses the Manufactured Home. Borrower will be deemed to have waived any claim to such personal property unless written demand by certified mail is made upon Lender within twenty-five (25) days after repossession. If Borrower fails to give Lender such written demand, Lender may dispose of such personal property.

Borrower's Initials
Co-Borrower's Initials

Page 5 of 8

CA Rev. 05/21/2013

21st Mortgage Corp. NMLS 2280 - Douglas Wayne Bohrer, NMLS 308023

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 9 of

**EXHIBIT 1**

**INFORMATION SHARING:** Lender may investigate Borrower's credit history and credit capacity in connection with establishing, modifying, extending, and/or enforcing Borrower's account, and share information about Borrower and Borrower's account with credit reporting agencies and others as allowed by law. Lender may also verify Borrower's employment, income, assets, and debts; and anyone receiving a copy of this Note is hereby authorized to release such information to Lender. Borrower authorizes Lender to release to third parties any information necessary to monitor the status of insurance on Borrower's Manufactured Home, and to obtain the insurance described in this Note. If Borrower's Manufactured Home is on rented property or property that is not owned by Borrower, Borrower authorizes Lender and Borrower's landlord (or the property owner) to exchange information as to Borrowers obligations to Lender under this Note and the status of such obligations, information relating to Lender's security interest in Borrower's Manufactured Home, and information regarding the lease or arrangement between Borrower and landlord (or the property owner), as well as the obligations and status of such obligations to landlord (or the property owner). Whether or not the Borrower rents the Manufactured Home to a party in accordance with the terms of this Note, Borrower authorizes Lender and Borrower's renter to exchange information as to Lender's security interest in Borrower's Manufactured Home and the rental agreement or arrangement, as well as to the obligations, and the status of such obligations of Borrower to Lender under this Note. This provision also applies to any Co-Signer who executes this Note.

**OTHER TERMS AND CONDITIONS:** Borrower will not move the Manufactured Home without Lender's prior written consent. Borrower will not sell the Manufactured Home without Lender's prior written consent. Borrower agrees that the Manufactured Home is, and shall remain, during the term of this Note, personal property. Unless Lender gives prior written consent, Borrower shall not allow the Manufactured Home to become a part of real estate or to lose its status as personal property under applicable law. Borrower will not encumber or abandon the Manufactured Home, nor allow any lot lien, landlord lien, or similar lien, which may by law be superior to Lender's security interest, to encumber the Manufactured Home. Borrower will not use the Manufactured Home for illegal activity. Borrower will not use the Manufactured Home for business or hire, or rent it to another party, without obtaining Lender's prior written consent. Borrower will pay promptly all taxes, assessments, and any liens and encumbrances on the Manufactured Home. Borrower will notify Lender promptly of any loss or damage to the Manufactured Home, as well as any condemnation, confiscation or theft of the Manufactured Home. Upon Lender's request, Borrower will promptly provide Lender with proof satisfactory to Lender that: (1) Borrower has the insurance required under this Note; (2) Borrower has paid all taxes assessed against the Manufactured Home; (3) Borrower has paid all park or lot rent (and any other related charges) due; (4) Lender holds the only lien against the Manufactured Home; (5) the Manufactured Home is in good condition and repair; and (6) Borrower has complied with all of the promises Borrower made in this Note. Lender may inspect the Manufactured Home at any time. If Borrower is married, and residing in a community property state, both Borrower's community property and separate property are liable for all payments under this Note. Borrower waives all marital rights, homestead exemption and other exemptions relating to the Collateral. Borrower will cooperate with Lender regarding any requests after closing to correct any errors with respect to this Note or the transaction and agrees to provide any and all additional documentation deemed necessary by Lender to complete this transaction. Lender may rely on a telecopy, photocopy, or electronically imaged copy of this Note as if it were an original, including use in legal proceedings or arbitrations. Borrower acknowledges that any broker or other third party used to facilitate this transaction may receive compensation from Lender for its services.

**ASSUMPTION:** Someone buying the Manufactured Home may assume the remainder of Borrower's obligations under this Note on the original terms only if such person is approved by Lender.

**ASSIGNMENT:** Lender may assign this Note to any person or entity. All rights granted to Lender under this Note shall apply to any assignee of this Note.

**WAIVER AND MODIFICATION:** Lender's waiver of any default shall not constitute a waiver of any other default. The procurement of required property insurance, or the payment of taxes, or other liens, or other charges, by Lender shall not be a waiver of Lender's right to accelerate the maturity of this Note and declare default herein. To the extent permitted by law, Borrower agrees to give up Borrower's rights to require Lender to do certain things. Borrower does not give up any rights that are provided in this Note. Unless the law or this Note provides otherwise, Lender is not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or, (3) give notice that Lender intends to make, or is making, this Note immediately due.

**WARRANTIES:** LENDER MAKES NO WARRANTIES ON THE MANUFACTURED HOME, AND EXPRESSLY EXCLUDES ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, UNLESS GIVEN TO BORROWER BY LENDER IN WRITING AT THE TIME OF SALE. BORROWER AGREES THAT THE YEAR OF THE MANUFACTURED HOME IS FOR IDENTIFICATION PURPOSES ONLY AND MAY NOT BE THE BASIS FOR A WARRANTY OR OTHER CLAIM AGAINST LENDER. THE ABOVE DISCLAIMERS DO NOT AFFECT ANY WARRANTIES COVERING THE MANUFACTURED HOME THAT MAY BE PROVIDED BY THE MANUFACTURER, OTHER THIRD PARTIES, OR THAT ARE REQUIRED BY LAW.

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 10
of 31
**EXHIBIT 1**



**VALIDITY AND EFFECTIVENESS:** Wherever possible each provision of this Note shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Note is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, however, the remainder of such provision or the remaining provisions of this Note shall not be invalidated. This Note shall be governed both as to issues of formation and performance by the laws of the State of California and applicable federal law. This Note shall have no effect until and unless signed by Borrower and Lender. Lender does not intend to charge or collect any interest, charge, or fee greater than the law allows. If Lender charges or collects any amount greater than what the law allows, Lender will apply the excess to the Unpaid Balance and any other amounts due under the Note and shall refund any excess. Lender will treat any amount applied to the Unpaid Balance as a partial Prepayment.

**ENTIRE AGREEMENT:** This Note, any separate escrow agreement, and any mortgage or deed of trust, together, the "Entire Agreement Documents," shall constitute the entire agreement between Borrower and Lender. To the extent permitted by applicable law, Borrower agrees that no representations, oral or written, have been made to Borrower to induce Borrower to enter into the Entire Agreement Documents, except as set forth therein.

**GUARANTY:** Any Co-Signer signing the guaranty of this Note agrees that all amounts owed under this Note will be paid when due. Co-Signer's obligation continues even if Borrower is released or if Lender waives or delays enforcement of any rights under this Note. Lender need not give Co-Signer notice of any such waiver, delay or release. See Notice to Co-Signer before signing this guaranty.

THIS SPACE LEFT INTENTIONALLY BLANK

Case: 21-10498   Doc# 14-2   Filed: 12/17/21   Entered: 12/17/21 12:06:25   Page 11
of 31
**EXHIBIT 1**



TO CONTACT 21ST MORTGAGE CORPORATION ABOUT THIS ACCOUNT CALL (865) 523-2120 OR 1-800-955-0021.

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR (BORROWER) COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR (BORROWER) SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR (BORROWER) HEREUNDER.

### NOTICE TO THE CONSUMER

(1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE NOTE YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS; (3) BY SIGNING THIS NOTE, YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE; AND, (4) AT ANY TIME, YOU HAVE THE RIGHT TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE WITHOUT PENALTY.

**SIGNATURE OF BORROWER(S):** "Borrower" refers to all persons who sign this Note as "Borrower" and "Co-Borrower", jointly and severally. Borrower's signature(s) below indicates the following: 1) Borrower has fully and completely read all of this Note; 2) Borrower has consulted independent legal counsel to clarify any matters, if Borrower deemed such was necessary; 3) Borrower has no questions regarding any matters contained in this Note and understands all terms, conditions and obligations set forth in this Note; and, 4) Borrower agrees to fully satisfy and abide by all terms, conditions and obligations set forth in this Note.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_____     3/10/2015
LARRY H LOGAN   (Borrower)          Date

_____     3-10-15
GABRIELA LOGAN   (Co-Borrower)       Date

**SIGNATURE OF GUARANTOR(S):** The undersigned, jointly and severally, agree(s) to pay all amounts due on this Note until all amounts due on this Note are paid in full. The undersigned also agree(s) to all the terms and conditions of this Note.

_____     _____
(Co-Signer)                         Date

_____     _____
(Co-Signer)                         Date

NOT VALID UNLESS ACCEPTED BY LENDER: _____
21ST MORTGAGE CORPORATION

By: Sterling Mills LP    3-11-15
    Printed Name    Title    Date

Initialing below is not necessary. Borrower(s) should sign above.

Borrower's Initials_____
Co-Borrower's Initials_____

CA Rev. 05/21/2013

21st Mortgage Corp. NMLS 2280 - Douglas Wayne Bohrer, NMLS 308023

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 12
of 31

**EXHIBIT 1**

# EXHIBIT 2

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## REGISTRATION CARD

Manufactured Home

Decal No: **LBE9973**

| Manufacturer ID/Name | | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|---|
| 90153 | THE ANDREW KARSTEN CO INC | VILLA | 10008F | 05/05/2003 | 05/29/2003 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | SFC | SCC | Exempt | Use | Type |
|---|---|---|---|---|---|---|---|---|---|
| KCCA01K31382A | RAD138279 | 30,240 | | | | | | SFD | |
| KCCA01K31382B | RAD138279B | 30,240 | | | | 40 | | | |

| | Issued | Total Fees Paid |
|---|---|---|
| | May 14, 2015 | $176.00 |

**Addressee**

21ST MORTGAGE CORP
PO BOX 477
KNOXVILLE, TN 37901

 

**Registered Owner(s)**

LARRY H LOGAN
GABRIELA LOGAN
Joint Tenants with Right of Survivorship
414 OTT ST
SANTA ROSA, CA 95407

**Situs Address**

414 OTT ST
SANTA ROSA, CA 95407

**Legal Owner(s)**

21ST MORTGAGE CORP
PO BOX 477
KNOXVILLE, TN 37901
Lien Perfected On:     04/17/15 13:30:30

**LEGAL OWNER COPY
INFORMATION ONLY**

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.
THE CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 8432492

05142015 - 217

EXHIBIT 2

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE
Manufactured Home

Decal No: LBE9973

| Manufacturer ID/Name | | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|---|
| 90153 | THE ANDREW KARSTEN CO INC | VILLA | 56006F | 05/05/2003 | 05/29/2003 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | SPC | SCC | Exempt | Use | Type |
|---|---|---|---|---|---|---|---|---|---|
| KCCA01K31382A | RAD1382797 | 30,240 | 56' | 13' 6" | | 49 | | SFD | LPT |
| KCCA01K31382B | RAD1382798 | 30,240 | 56' | 13' 6" | | | | | |

| | Issued | Total Fees Paid |
|---|---|---|
| | May 14, 2015 | $176.00 |



**Addressee**
21ST MORTGAGE CORP
PO BOX 477
KNOXVILLE, TN 37901

**Registered Owner(s)**
LARRY H LOGAN
GABRIELA LOGAN
Joint Tenants with Right of Survivorship
414 OTT ST
SANTA ROSA, CA 95407

**Situs Address**
414 OTT ST
SANTA ROSA, CA 95407

**Legal Owner(s)**
21ST MORTGAGE CORP
PO BOX 477
KNOXVILLE, TN 37901
Lien Perfected On: 04/17/15 13:30:30

## IMPORTANT
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.
THE CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 8432492

05142015 - 218

## EXHIBIT 2

# EXHIBIT 3



**21st MORTGAGE CORPORATION**

620 Market Street, Ste. 100 * Knoxville, TN 37902
Office: (800) 955-0021

September 5, 2019

# NOTICE OF DEFAULT

**TO:**   Larry H Logan
414 Ott St
Santa Rosa, CA 95407

**RE:**   Manufactured Home Loan #: ████
Address of Manufactured Home:  414 Ott St  Santa Rosa, CA 95407
Complete Description of Home: 2003, The Andrew Karsten Co Inc, Villa, 26x56
Serial #: KCCA01K31382A/B
Decal #: LBE9973

You are in default under the terms of your loan agreement Consumer Loan Note, Security Agreement, & Disclosure Statement  ("Security Agreement") dated March 10, 2015, in that you have failed to pay:

| | |
|---|---|
| One (1) monthly installment payments (August 15, 2019 thru September 14, 2019): | $1,422.82 |
| Accrued, but unpaid Late Charges: | $299.15 |
| Space Rent Advanced | $0.00 |
| Partial Payments: | ($148.52) |
| TOTAL: | $1,573.45 |

You are also in default under the Security Agreement in that you failed to comply with the terms and conditions of the rental agreement with the manufactured home park/community which caused the community to serve to you a Three (3) Day Notice to Pay Rent Or Quit & Sixty (60) Day Notice to Terminate Possession (a copy of this Notice is included).

These defaults give 21st Mortgage Corporation ("21st") the right to sell your manufactured home or mobile home, which is registered with the Department of Housing and Community Development under the above listed number at the above address unless the default is promptly cured.

You may cure the default by:

(a) sending a cashier's check or money order for $1,573.45, which includes installments, attorneys' fees and late charges through August 2019, to the address listed above by October 21, 2019.

AND

**Notice continues on next page**

**EXHIBIT 3**

(b) remitting proof that the termination of tenancy has been resolved and canceled by community management regarding 414 Ott St   no later than October 21, 2019.  Proof must be in the form of written verification from the above-referenced mobile home community signed by the park owner, agent, or manager and must state that the Three (3) Day Notice to Pay Rent Or Quit & Sixty (60) Day Notice to Terminate Possession, dated August 23, 2019, has been withdrawn and that 21st is no longer obligated to foreclose on its security interest.  Written verification must be postmarked no later than midnight October 21, 2019, and should be forwarded to the address listed above.

To cure the default, you will also be required to reimburse 21st for any space rent or other charges advanced to the manufactured home community, for reasonable attorney's fees and expenses incurred, and for other sums to which 21st may have become entitled under the terms of the security agreement after the date of this Notice.  You may repay the outstanding obligation in its entirety by paying 21st the sum of  $127,275.68  by October 21, 2019, plus any amount necessary to reimburse 21st for all advances and reasonable attorneys fee and expenses, and any other sums to which 21st may have become entitled under the terms of the Security Agreement, after the date of this Notice.

This is neither a demand for payment of a debt nor a notice of personal liability to any recipient whose debt might have been discharged in bankruptcy or who might be subject to automatic stay pursuant to the United States Bankruptcy Code.  However, 21st Mortgage needs to learn your intentions concerning the subject property.  Regular payments in accordance with the payment schedule in the loan agreement are recommended if you wish to retain possession of the property even though you are not personally liable for any debt or loan that previously related to the property.  21st Mortgage's lien on the property is still valid under applicable law without a debt or loan accompanying the lien.

DATE NOTICE MAILED: September 5, 2019

**21st Mortgage Corporation**
Melissa Phillips,
Park Coordinator



EXPIRES: October 21, 2019
CC: Department of Housing and Community Development
PO Box 2111
Sacramento, CA 95812-2111

**\*\*PLEASE TAKE NOTICE\*\***

21st Mortgage is a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

**Notice continues on next page**

**EXHIBIT 3**

Please be again advised that this communication constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to automatic stay of Section 362 of the United States Bankruptcy Code.

The Department of Housing and Urban Development (HUD) has approved certain experienced counseling organizations to provide home ownership counselling to qualified borrowers. Home ownership counseling is available free of charge. You may obtain a list of HUD Approved Counseling Agencies by calling this number: (800) 569-4287. You should contact one of the HUD Counseling Agencies or your local HUD office for more information about these counseling services. If this loan delinquency continues, you could lose your home.

| Service members Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Expiry 12/31/2017 |
|---|---|---|

Legal Rights and Protections under the SCRA

* Service members on "active duty" or "active service," or a spouse or dependent of such a service member may be entitled to certain legal protections and debt relief pursuant to the Service members Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

Who May Be Entitled to Legal Protections Under the SCRA?

* Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
* Reserve and National Guard personnel who have been activated and are on Federal active duty
* National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
* Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
* Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

What Legal Protections Are Servicemembers Entitled To Under the SCRA

* The SCRA states that a debt incurred by a service member, or service member and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter in the case of an obligation or liability consisting of a mortgage, trust deed or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
* The SCRA states that in legal action to enforce a debt against real estate that is filed during, or within one year after the service members military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemembers military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of real estate.
* The SCRA contains many other protections besides those applicable to home loans.

How Does A Service member or Dependent Request Relief Under the SCRA?

* In order to request relief under the SCRA from loans with interest rates above 6% a service member or spouse must provide a written request to the lender, together with a copy of the service members military orders.
  21st Mortgage Corporation
  620 Market St., Ste 100
  Knoxville, TN 37902    (800) 955-0021
* There is no requirement under the SCRA, however, for a service member to provide a written notice or a copy of a servicemembers military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defenses Defense ManpowerData Centers website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for service members to alert the lender of their military status in these situations, it still a good idea for the service member to do so.

How Does a Service member or Dependent Obtain Information About the SCRA?

* Service members and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed services is available at: http://legalassistance.law.af.mil/content/locator.php.
* Military One Source is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protection under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instruction for area outside the United States are provided on the website

**EXHIBIT 3**

**WARNING:** This Notice is the first three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to California Civil Code section 798.56(e)(5), if you have been given a three day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your tenancy on three or more occasions within a 12 month period, management is not required to give you a further three day period to pay rent or vacate the tenancy before your tenancy can be terminated.

**STANDARD CALIFORNIA MOBILEHOME PARK**
**COMBINED THREE DAY NOTICE TO PAY**
**RENT AND NOTICE OF TERMINATION**
**[Civil Code section 798.56(e)]**

**TO:  LARRY H. LOGAN, GABRIELA LOGAN, DEBORAH TEAMER,**
      **414 OTT AVE, SP. 97**
      **SANTA ROSA, CA 95407**

      **AND TO ALL OTHER PERSONS IN POSSESSION of the premises herein referred to and commonly known as:**

**414 OTT AVE, SP. 97, SANTA ROSA, CA 95407**

NOTICE IS HERBY GIVEN that, pursuant to the lease or rental agreement by which you hold possession of the above-described premises, there is now due, owing and unpaid the sum of Twelve Thousand Three Hundred Seventy-Two Dollars ($12,372.00) in unpaid rent that became due as follows:

| MONTH (Period) | CONTRACT RENT | PAID | AMOUNT DUE |
|---|---|---|---|
| 8/1/17 - 8/31/17 | $494.88 | -0- | $494.88 |
| 9/1/17 - 9/30/17 | $494.88 | -0- | $494.88 |
| 10/1/17 - 10/31/17 | $494.88 | -0- | $494.88 |
| 11/1/17 - 11/30/17 | $494.88 | -0- | $494.88 |
| 12/1/17 - 12/31/17 | $494.88 | -0- | $494.88 |
| 1/1/18 - 1/31/18 | $494.88 | -0- | $494.88 |
| 2/1/18 - 2/28/18 | $494.88 | -0- | $494.88 |
| 3/1/18 - 3/31/18 | $494.88 | -0- | $494.88 |
| 4/1/18 - 4/30/18 | $494.88 | -0- | $494.88 |
| 5/1/18 - 5/31/18 | $494.88 | -0- | $494.88 |
| 6/1/18 - 6/30/18 | $494.88 | -0- | $494.88 |
| 7/1/18 - 7/31/18 | $494.88 | -0- | $494.88 |

**EXHIBIT 3**

| | | | |
|---|---|---|---|
| 8/1/18 - 8/31/18 | $494.88 | -0- | $494.88 |
| 9/1/18 - 9/30/18 | $494.88 | -0- | $494.88 |
| 10/1/18 - 10/31/18 | $494.88 | -0- | $494.88 |
| 11/1/18 - 11/30/18 | $494.88 | -0- | $494.88 |
| 12/1/18 - 12/31/18 | $494.88 | -0- | $494.88 |
| 1/1/19 - 1/31/19 | $494.88 | -0- | $494.88 |
| 2/1/19 - 2/28/19 | $494.88 | -0- | $494.88 |
| 3/1/19 - 3/31/19 | $494.88 | -0- | $494.88 |
| 4/1/19 - 4/30/19 | $494.88 | -0- | $494.88 |
| 5/1/19 - 5/31/19 | $494.88 | -0- | $494.88 |
| 6/1/19 - 6/30/19 | $494.88 | -0- | $494.88 |
| 7/1/19 - 7/31/19 | $494.88 | -0- | $494.88 |
| 8/1/19 - 8/31/19 | $494.88 | -0- | $494.88 |
| **BALANCE DUE** | | | **$12,372.00** |

**WITHIN THREE (3) DAYS** after service of this Notice on you, you are required to pay the said balance owing in full or your tenancy will be terminated pursuant to the applicable provisions of the Mobilehome Residency Law, and you will be required to vacate the premises and remove your mobilehome therefrom as required below or sell the mobilehome at your election within sixty (60) days of the date this Notice is served upon you. If you elect to sell your mobilehome within said sixty (60) day period, park management reserves the right to require its removal pursuant to Civil Code section 798.73.

Payment should be payable to: SANTA ROSA MOBILE ESTATES

The name, telephone number, and address of the person to whom payment shall be delivered is as follows:

Robin Snyder, Park Manager
Santa Rosa Mobile Estates Office
461 Bejay Ave
Santa Rosa, CA 95407
Telephone: (707) 584-0319

The usual days and hours that said person(s) will be available to receive payment are: Monday, Tuesday, Thursday and Friday 10:30 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m., Wednesday 10:30 a.m to 1:00 p.m.   Payment must be made in the form of a money order or cashier's check only.

**EXHIBIT 3**

**\*\*\*IMPORTANT\*\*\***

**FURTHER NOTICE IS HEREBY GIVEN** that if said due, owing and unpaid amount is not paid within three (3) days after service of ths Notice, then your lessor, pursuant to the applicable provisions of the Mobilehome Residency Law, declares the lease or rental agreement by which you hold possession of the above-described premises forfeited and your tenancy terminated for the reasons specified above, and you must deliver up possession of said premises to the undersigned, who is the authorized agent of your lessor, and remove your mobilehome from the premises or sell the mobilehome at your election within sixty (60) days after service of this Notice upon you. If you elect to sell your mobilehome within said sixty (60) day period, park management reserves the right to require its removal pursuant to Civil Code section 798.73.

IF YOU FAIL to pay the amount due as described above and do not deliver up possession sixty (60) days after the service of this Notice upon you, legal proceedings will be commenced against you to recover possession of said premises, to declare the lease or rental agreement by which you hold possession of said premises forfeited, and to recover rents, damages, and

statutory damages for the unlawful detainer of said premises, as well as attorney's fees as provided by law.

Dated: August 23, 2019                       CHARLES KLINE MANAGEMENT, INC.

By _____

                                                        Charles Kline, President
                                                        Authorized Agent for Park Owner

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 22

**EXHIBIT 3**



# 21st MORTGAGE CORPORATION

620 Market Street, Ste. 100  *  Knoxville, TN 37902
Office: (800) 955-0021

MORTGAGE
CORPORATION

September 5, 2019

## NOTICE OF DEFAULT

**TO:**   Gabriela Logan
414 Ott St
Santa Rosa, CA 95407



**RE:**   Manufactured Home Loan #: ███████
Address of Manufactured Home: 414 Ott St Santa Rosa, CA 95407
Complete Description of Home: 2003, The Andrew Karsten Co Inc, Villa, 26x56
Serial #: KCCA01K31382A/B
Decal #: LBE9973

You are in default under the terms of your loan agreement Consumer Loan Note, Security Agreement, &
Disclosure Statement  ("Security Agreement") dated March 10, 2015, in that you have failed to pay:

| | |
|---|---:|
| One (1) monthly installment payments (August 15, 2019 thru September 14, 2019): | $1,422.82 |
| Accrued, but unpaid Late Charges: | $299.15 |
| Space Rent Advanced | $0.00 |
| Partial Payments: | ($148.52) |
| TOTAL: | $1,573.45 |

You are also in default under the Security Agreement in that you failed to comply with the terms and
conditions of the rental agreement with the manufactured home park/community which caused the
community to serve to you a Three (3) Day Notice to Pay Rent Or Quit & Sixty (60) Day Notice to
Terminate Possession (a copy of this Notice is included).

These defaults give 21st Mortgage Corporation ("21st") the right to sell your manufactured home or mobile
home, which is registered with the Department of Housing and Community Development under the above
listed number at the above address unless the default is promptly cured.

You may cure the default by:

(a) sending a cashier's check or money order for $1,573.45, which includes installments, attorneys' fees
and late charges through August 2019, to the address listed above by October 21, 2019.

   AND

**Notice continues on next page**

Case: 21-10498    Doc# 14-2    Filed: 12/17/21    Entered: 12/17/21 12:06:25    Page 23
of 31

**EXHIBIT 3**

(b) remitting proof that the termination of tenancy has been resolved and canceled by community management regarding 414 Ott St   no later than October 21, 2019.  Proof must be in the form of written verification from the above-referenced mobile home community signed by the park owner, agent, or manager and must state that the Three (3) Day Notice to Pay Rent Or Quit & Sixty (60) Day Notice to Terminate Possession, dated August 23, 2019, has been withdrawn and that 21st is no longer obligated to foreclose on its security interest.  Written verification must be postmarked no later than midnight October 21, 2019, and should be forwarded to the address listed above.

To cure the default, you will also be required to reimburse 21st for any space rent or other charges advanced to the manufactured home community, for reasonable attorney's fees and expenses incurred, and for other sums to which 21st may have become entitled under the terms of the security agreement after the date of this Notice.  You may repay the outstanding obligation in its entirety by paying 21st the sum of  $127,275.68  by October 21, 2019, plus any amount necessary to reimburse 21st for all advances and reasonable attorneys fee and expenses, and any other sums to which 21st may have become entitled under the terms of the Security Agreement, after the date of this Notice.

This is neither a demand for payment of a debt nor a notice of personal liability to any recipient whose debt might have been discharged in bankruptcy or who might be subject to automatic stay pursuant to the United States Bankruptcy Code.  However, 21st Mortgage needs to learn your intentions concerning the subject property.  Regular payments in accordance with the payment schedule in the loan agreement are recommended if you wish to retain possession of the property even though you are not personally liable for any debt or loan that previously related to the property.  21st Mortgage's lien on the property is still valid under applicable law without a debt or loan accompanying the lien.

DATE NOTICE MAILED: September 5, 2019

**21st Mortgage Corporation**
Melissa Phillips,
Park Coordinator

EXPIRES: October 21, 2019
CC: Department of Housing and Community Development
PO Box 2111
Sacramento, CA 95812-2111



,

**\*\*PLEASE TAKE NOTICE\*\***

21st Mortgage is a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

**Notice continues on next page**

**EXHIBIT 3**

Please be again advised that this communication constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to automatic stay of Section 362 of the United States Bankruptcy Code.

The Department of Housing and Urban Development (HUD) has approved certain experienced counseling organizations to provide home ownership counselling to qualified borrowers. Home ownership counseling is available free of charge. You may obtain a list of HUD Approved Counseling Agencies by calling this number: (800) 569-4287. You should contact one of the HUD Counseling Agencies or your local HUD office for more information about these counseling services. If this loan delinquency continues, you could lose your home.

| Service members Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Expiry 12/31/2017 |
|---|---|---|

**Legal Rights and Protections under the SCRA**

- Service members on "active duty" or "active service," or a spouse or dependent of such a service member may be entitled to certain legal protections and debt relief pursuant to the Service members Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

**Who May Be Entitled to Legal Protections Under the SCRA?**

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

**What Legal Protections Are Servicemembers Entitled To Under the SCRA**

* The SCRA states that a debt incurred by a service member, or service member and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter in the case of an obligation or liability consisting of a mortgage, trust deed or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

* The SCRA states that in legal action to enforce a debt against real estate that is filed during, or within one year after the service members military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemembers military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of real estate.

* The SCRA contains many other protections besides those applicable to home loans.

**How Does A Service member or Dependent Request Relief Under the SCRA?**

* In order to request relief under the SCRA from loans with interest rates above 6% a service member or spouse must provide a written request to the lender, together with a copy of the service members military orders.
    21st Mortgage Corporation
    620 Market St., Ste 100
    Knoxville, TN 37902    (800) 955-0021

* There is no requirement under the SCRA, however, for a service member to provide a written notice or a copy of a servicemembers military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defenses Defense ManpowerData Centers website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for service members to alert the lender of their military status in these situations, it still a good idea for the service member to do so.

**How Does a Service member or Dependent Obtain Information About the SCRA?**

* Service members and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed services is available at: http://legalassistance.law.af.mil/content/locator.php.

* Military One Source is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protection under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instruction for area outside the United States are provided on the website

**EXHIBIT 3**

**WARNING:** This Notice is the first three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to California Civil Code section 798.56(e)(5), if you have been given a three day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your tenancy on three or more occasions within a 12 month period, management is not required to give you a further three day period to pay rent or vacate the tenancy before your tenancy can be terminated.

**STANDARD CALIFORNIA MOBILEHOME PARK**
**COMBINED THREE DAY NOTICE TO PAY**
**RENT AND NOTICE OF TERMINATION**
[Civil Code section 798.56(e)]

**TO:   LARRY H. LOGAN, GABRIELA LOGAN, DEBORAH TEAMER,**
       **414 OTT AVE, SP. 97**
       **SANTA ROSA, CA 95407**

**AND TO ALL OTHER PERSONS IN POSSESSION of the premises herein referred to and commonly known as:**

**414 OTT AVE, SP. 97, SANTA ROSA, CA 95407**

NOTICE IS HERBY GIVEN that, pursuant to the lease or rental agreement by which you hold possession of the above-described premises, there is now due, owing and unpaid the sum of Twelve Thousand Three Hundred Seventy-Two Dollars ($12,372.00) in unpaid rent that became due as follows:

| MONTH (Period) | CONTRACT RENT | PAID | AMOUNT DUE |
|---|---|---|---|
| 8/1/17 - 8/31/17 | $494.88 | -0- | $494.88 |
| 9/1/17 - 9/30/17 | $494.88 | -0- | $494.88 |
| 10/1/17 - 10/31/17 | $494.88 | -0- | $494.88 |
| 11/1/17 - 11/30/17 | $494.88 | -0- | $494.88 |
| 12/1/17 - 12/31/17 | $494.88 | -0- | $494.88 |
| 1/1/18 - 1/31/18 | $494.88 | -0- | $494.88 |
| 2/1/18 - 2/28/18 | $494.88 | -0- | $494.88 |
| 3/1/18 - 3/31/18 | $494.88 | -0- | $494.88 |
| 4/1/18 - 4/30/18 | $494.88 | -0- | $494.88 |
| 5/1/18 - 5/31/18 | $494.88 | -0- | $494.88 |
| 6/1/18 - 6/30/18 | $494.88 | -0- | $494.88 |
| 7/1/18 - 7/31/18 | $494.88 | -0- | $494.88 |

**EXHIBIT 3**

| | | | |
|---|---|---|---|
| 8/1/18 - 8/31/18 | $494.88 | -0- | $494.88 |
| 9/1/18 - 9/30/18 | $494.88 | -0- | $494.88 |
| 10/1/18 - 10/31/18 | $494.88 | -0- | $494.88 |
| 11/1/18 - 11/30/18 | $494.88 | -0- | $494.88 |
| 12/1/18 - 12/31/18 | $494.88 | -0- | $494.88 |
| 1/1/19 - 1/31/19 | $494.88 | -0- | $494.88 |
| 2/1/19 - 2/28/19 | $494.88 | -0- | $494.88 |
| 3/1/19 - 3/31/19 | $494.88 | -0- | $494.88 |
| 4/1/19 - 4/30/19 | $494.88 | -0- | $494.88 |
| 5/1/19 - 5/31/19 | $494.88 | -0- | $494.88 |
| 6/1/19 - 6/30/19 | $494.88 | -0- | $494.88 |
| 7/1/19 - 7/31/19 | $494.88 | -0- | $494.88 |
| 8/1/19 - 8/31/19 | $494.88 | -0- | $494.88 |
| **BALANCE DUE** | | | **$12,372.00** |

**WITHIN THREE (3) DAYS** after service of this Notice on you, you are required to pay the said balance owing in full or your tenancy will be terminated pursuant to the applicable provisions of the Mobilehome Residency Law, and you will be required to vacate the premises and remove your mobilehome therefrom as required below or sell the mobilehome at your election within sixty (60) days of the date this Notice is served upon you. If you elect to sell your mobilehome within said sixty (60) day period, park management reserves the right to require its removal pursuant to Civil Code section 798.73.

Payment should be payable to: SANTA ROSA MOBILE ESTATES

The name, telephone number, and address of the person to whom payment shall be delivered is as follows:

Robin Snyder, Park Manager
Santa Rosa Mobile Estates Office
461 Bejay Ave
Santa Rosa, CA 95407
Telephone: (707) 584-0319

The usual days and hours that said person(s) will be available to receive payment are: Monday, Tuesday, Thursday and Friday 10:30 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m., Wednesday 10:30 a.m to 1:00 p.m. Payment must be made in the form of a money order or cashier's check only.

**EXHIBIT 3**

***IMPORTANT***

FURTHER NOTICE IS HEREBY GIVEN that if said due, owing and unpaid amount is not paid within three (3) days after service of ths Notice, then your lessor, pursuant to the applicable provisions of the Mobilehome Residency Law, declares the lease or rental agreement by which you hold possession of the above-described premises forfeited and your tenancy terminated for the reasons specified above, and you must deliver up possession of said premises to the undersigned, who is the authorized agent of your lessor, and remove your mobilehome from the premises or sell the mobilehome at your election within sixty (60) days after service of this Notice upon you. If you elect to sell your mobilehome within said sixty (60) day period, park management reserves the right to require its removal pursuant to Civil Code section 798.73.

IF YOU FAIL to pay the amount due as described above and do not deliver up possession sixty (60) days after the service of this Notice upon you, legal proceedings will be commenced against you to recover possession of said premises, to declare the lease or rental agreement by which you hold possession of said premises forfeited, and to recover rents, damages, and

statutory damages for the unlawful detainer of said premises, as well as attorney's fees as provided by law.

Dated: August 23, 2019                    CHARLES KLINE MANAGEMENT, INC.

By _____

Charles Kline, President
Authorized Agent for Park Owner

**EXHIBIT 3**

# EXHIBIT 4

**BARRETT DAFFIN FRAPPIER**
**TREDER & WEISS, LLP**
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

ATTORNEYS AND COUNSELORS AT LAW

3990 E. CONCOURS STREET
SUITE 350
ONTARIO, CALIFORNIA 91764
TELEPHONE: (626) 371-7000
TELECOPIER: (972) 661-7709

June 18, 2020

**NOTICE OF OUR PLAN TO SELL PROPERTY (MOBILEHOME)**

SENT VIA CERTIFIED AND REGULAR MAIL
Larry H. Logan
Gabriella Logan
414 Ott Drive, Space 97
Santa Rosa, California 95407

Re: Bonower(s): Larry H. Logan, Gabriella Logan
Our Client 21st Mortgage Corporation
Account No. ▓▓▓▓▓▓
2003 The Andrew Karsten Co. Inc."Villa" (27' X 57') Mobilehome, Serial Number
KCCA01K31382A/B; DECAL #:LBE9973 located at 414 Ott Drive, Space 97
Santa Rosa, California 95407 (hereinafter the "Subject Premises")

We have repossessed your 2003 The Andrew Karsten Co. Inc."Villa" (27' X 57') Mobilehome,
Serial Number KCCA01K31382A/B; DECAL #:LBE9973 located at 414 Ott Drive, Space 97
Santa Rosa, California 95407 (the "Mobilehome"), because you broke promises under the Security
Agreement.

We will sell the Mobilehome at private sale sometime after July 6, 2020. A sale could include a lease
or license.

The money that we get from the private sale (after paying our costs) will reduce the amount you
owe. If we get less money than you owe at the private sale, you will not owe us the difference. If we
get more money than you owe at the private sale, you will get the extra money, unless we must pay it
to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe
(not just the past due payments), including our expenses. To learn the exact amount you must pay,
call Nicole Cerveny at 800-955-0021 EXT 1368. IN ORDER TO REMAIN IN THE
MOBILEHOME PARK, YOU WILL ALSO HAVE TO REACH A RESOLUTION WITH
MOBILEHOME PARK MANAGEMENT.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us Nicole Cerveny at 800-955-0021 EXT 1368 or write to us at 21st Mortgage Corporation, P.O. Box 477 Knoxville, Tennessee 37901

We are sending this notice to the following other people who have an interest in the Mobilehome or who owe money under your agreement:   None

Date Notice Mailed: June 18, 2020

BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP

*Mack A. Blackman*

MARK S. BLACKMAN,
Attorneys for Creditor

Sale Date: July 6, 2020 at 5:00 PM (Eastern Daylight Time)

c: Department of Housing and Community Development

NOTICE TO PRESENT AND FORMER (DISCHARGED) BANKRUPTCY DEBTORS: We are sending you this Notice in accordance with California Health and Safety Code §18037.5, and/or California Commercial Code §9610 et. seq. which require that this Notice be sent prior to the completion of a foreclosure or repossession. THIS IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU. If this debt has been discharged in your bankruptcy case, you may not be obligated to pay any additional sums unless you wish to retain the above-described collateral, in which case you must pay all sums due and owing.